FAIR, J., FOR THE COURT:
 

 ¶ 1. Kenneth Nixon suffered a work-related injury within the course and scope of his employment with Howard Industries. Following a hearing, the administrative judge found Nixon had incurred a loss of wage-earning capacity and awarded him permanent partial-disability benefits. The administrative judge's findings and award were adopted by the Mississippi Workers' Compensation Commission. The sole issue on appeal is whether the Commission erred in its computation of Nixon's disability benefits. Because the Commission failed to use Nixon's stipulated pre-injury weekly wage in its calculation, we reverse and render.
 

 FACTS
 

 ¶ 2. On August 27, 2011, Nixon was working as an assembler at Howard Industries when he injured his back. At the hearing, both parties stipulated that Nixon's average weekly wage was $645.40-considerably more than what he would make in a 40-hour work week at his hourly rate of $12.26. The record indicates that the stipulated figure included regular overtime.
 

 ¶ 3. Nixon kept working at Howard Industries after the accident and was still working there at the time of the hearing. Since 2011, Nixon has received two increases in his hourly wage as a result of union negotiations-a total increase of
 $0.70 per hour since the accident, to $12.96 an hour.
 

 ¶ 4. Nixon testified that, since the injury, his work at Howard Industries has continued to cause pain in his back. He has received injections, prescription pain medication, and has had work done on the nerves in his back. Nixon has been treated by several doctors, but predominantly by Dr. Joe Leigh, an anesthesiologist and pain management specialist. Dr. Leigh placed Nixon under restrictions in 2012, limiting him to lifting 40 pounds occasionally. In 2016, Dr. Leigh reduced the limit to 20 pounds, and Nixon is now unable to do most of his former work.
 

 ¶ 5. In April 2016, Nixon met with Bruce Brawner, a vocational rehabilitation expert. Brawner testified that Nixon lost access to five of the six pre-injury occupations for which he was qualified, an 83% total loss of access. Brawner testified that Nixon suffered a 53% loss of access based on his current conditions. Brawner added that Nixon could compete in the open labor market based on the light-duty levels he had been assigned. He opined that Nixon should be able to earn $8.96 per hour on the open labor market. Assuming a 40-hour work week, Nixon's weekly salary would be $358.40.
 

 ¶ 6. Following the hearing, the administrative judge found that Nixon had suffered a loss of wage-earning capacity. But instead of using Nixon's stipulated pre-injury weekly wage of $645.40 in calculating Nixon's benefits, the administrative judge used $490.40, which she arrived upon by assuming a 40-hour work week at his pre-injury hourly rate of $12.26. As a result, the administrative judge ordered Howard Industries to pay permanent partial-disability benefits in the amount of $88.27 per week, continuing for 450 weeks. Pursuant to the statute, that figure is two-thirds of the difference between $490.40 and $358.40.
 

 ¶ 7. Nixon appeals.
 

 STANDARD OF REVIEW
 

 ¶ 8. "The scope and standards of review for workers' compensation cases are well-established."
 
 Short v. Wilson Meat House LLC
 
 ,
 
 36 So.3d 1247
 
 , 1250 (¶ 16) (Miss. 2010). As an appellate court, we review the decision of the Commission, not that of the administrative judge.
 

 Id.
 

 ¶ 9. "This Court's review is limited to determining whether the Commission's decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated ... constitutional or statutory rights.... [T]he Commission is the ultimate fact-finder and judge of the credibility of witnesses; therefore, we may not reweigh the evidence that was before the Commission."
 
 Pulliam v. Miss. State Hudspeth Reg'l Ctr.
 
 ,
 
 147 So.3d 864
 
 , 868 (¶ 16) (Miss. Ct. App. 2014) (citations and internal quotation marks omitted). "If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious.' "
 
 Short
 
 ,
 
 36 So.3d at 1251
 
 (¶ 20) (quoting
 
 Public Emps.' Ret. Sys. v. Dearman
 
 ,
 
 846 So. 2d 1014
 
 , 1019 (¶ 14) (Miss. 2003) ).
 

 DISCUSSION
 

 ¶ 10. Nixon contends that the Commission erred in multiplying his pre-injury hourly wage of $12.26 times 40 hours ($490.40) to calculate his average weekly wage instead of his stipulated weekly wage of $645.40. In support of his argument, Nixon cites Mississippi Code Annotated sections 71-3-31 (Rev. 2011) and 71-3-17(c)(25) (Rev. 2011).
 

 1. Weekly Wage Calculation
 

 ¶ 11. Mississippi Code Annotated section 71-3-31 states that "the average weekly wages ... [are] to be determined from the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of injury divided by fifty-two (52)." The Commission calculated Nixon's weekly wages from his hourly rate, assuming a 40-hour workweek. Nixon contends it should have used $645.40, the stipulation based on his pre-injury history of regular overtime.
 

 ¶ 12. Since 1956, the Mississippi Supreme Court has held that the basis of computation under section 71-3-31 shall be the difference of the claimant's average weekly wage before the injury and earning capacity post-injury.
 
 See
 

 Webster Const. Co. v. Bates
 
 ,
 
 227 Miss. 207
 
 , 216-17,
 
 85 So.2d 795
 
 , 798 (1956). The supreme court has emphasized that the calculation is based on "
 
 actual
 
 earnings before injury with earning capacity after injury."
 
 Russell v. Se. Utils. Serv. Co.
 
 ,
 
 230 Miss. 272
 
 , 281,
 
 92 So.2d 544
 
 , 547 (1957) (emphasis added). Accordingly, the Commission had no basis to reject Nixon's stipulated average weekly wage of $645.40.
 

 2. Calculation of Payments
 

 ¶ 13. Next, Nixon contends that the Commission erred in its calculation of disability compensation payments. He claims that in order to calculate the compensation owed, the Commission must compare the average pre-injury weekly wage to the post-injury weekly wage under section 71-3-17(c)(25), which is based on what he could earn for 40 hours at the estimated post-injury hourly rate in an open market, awarding compensation in the amount of 66-2/3% of the difference.
 

 ¶ 14. Mississippi Code Annotated section 71-3-17(c)(25) (Rev. 2011) states that the compensation for permanent partial disability "shall be sixty-six and two-thirds percent ... of the difference between his average weekly wages ... and his wage-earning capacity thereafter ...." Here, the administrative judge modified the formula to calculate Nixon's permanent partial-disability benefits, awarding the difference between the pre-injury hourly wage of $12.26 and the post-injury hourly wage of $8.96-the amount Brawner, the vocational rehabilitation expert, had said Nixon was capable of earning outside Howard Industries.
 

 ¶ 15. The Commission found Nixon's pre-injury wage-earning capacity to be his hourly rate of $12.26 times 40 ($490.40). Subtracting that from the post-injury capacity of $8.96 per hour times 40 ($358.40), the Commission arrived at $132.40. Further reducing that to the statutory two-thirds, the Commission arrived at a weekly compensation of $88.27.
 

 ¶ 16. As we have already held, the Commission should have used the stipulated pre-injury weekly wage as Nixon's average weekly wage, pursuant to section 71-3-31. It is therefore clear that the Commission erred in calculating Nixon's benefits. The Commission should have taken the difference between the stipulated pre-injury average weekly wage of $645.40 from a 40-hour work week at the post-injury earning capacity of $8.96 per hour. Subtracting the present wage-earning capacity ($358.40) from the pre-injury average weekly wage ($645.40) brings the total to $287. Reducing that to the statutory two-thirds, we arrive at $191.33 as the amount that should have been awarded by the Commission.
 

 ¶ 17. Because the Commission erred in its calculation of benefits, we reverse the Commission's decision and render judgment
 that Nixon is entitled to $191.33 per week for 450 weeks.
 

 3. Cross-Appeal
 

 ¶ 18. Howard Industries contends that Nixon failed to show that he suffered permanent disability and a loss of wage earning capacity. But Howard Industries failed to file a cross-appeal as required by Rules 3 and 4 of the Mississippi Rules of Appellate Procedure. We hold that this precludes review on appeal.
 
 See
 
 M.R.A.P. 4(c).
 

 ¶ 19. In the separate opinion's view, Howard Industries was not required to file a cross-appeal because "Nixon's notice of appeal challenged the entire Order and sought reversal of the Commission's ruling." Mississippi Rule of Appellate Procedure 3(c) requires that "[t]he notice of appeal ... specify the party or parties taking the appeal and the party or parties against whom the appeal is taken, and shall designate as a whole or in part the judgment or order appealed from." M.R.A.P. 3(c). Nixon's notice of appeal stated that the Commission's findings and opinions were his grounds for appeal. In other words, the separate opinion contends that Nixon appealed the whole judgment. But it has failed to cite any authority supporting the proposition that appealing the entire order from a lower tribunal excuses the appellee from filing a cross-appeal.
 

 ¶ 20. The separate opinion attempts to distinguish this case from
 
 Brock v. Hankins Lumber Company
 
 ,
 
 786 So.2d 1064
 
 (Miss. Ct. App. 2000), but we find the cases to be quite similar. Brock appealed the entire circuit court order reversing the Commission's order.
 

 Id.
 

 at (¶ 1). Like Nixon, Brock did not challenge findings favorable to his position-namely, the Commission's finding that he had suffered a work-related injury (a finding that was also affirmed by the circuit court).
 

 Id.
 

 at 1068
 
 (¶ 19). In its appellee's brief, the employer tried to argue that Brock had not suffered a work-related injury.
 

 Id.
 

 at (¶ 17). This Court declined to address the issue, holding that "[i]n order for the appellee to gain reversal of any part of the decision of a lower tribunal about which the appellant brings no complaint, the appellee is required to file a cross appeal."
 

 Id.
 

 at (¶¶ 18-19).
 

 ¶ 21. More recently in
 
 Rasdon v. Thrash
 
 ,
 
 225 So.3d 557
 
 (Miss. Ct. App. 2017), Rasdon filed a notice of appeal from the circuit court's entire order affirming the county court's grant of summary judgment. Part of that judgment included the denial of Thrash's attorney's fees and expenses.
 

 Id.
 

 at 561
 
 (¶ 11). In his appellant's brief, Rasdon raised one issue-that it was "improper for the county court to rule summarily that [Thrash] did not breach the implied covenant of good faith and fair dealing."
 

 Id.
 

 at 559
 
 (¶ 6). In his appellee's brief, Thrash claimed that he was entitled to attorney's fees.
 

 Id.
 

 at 561
 
 (¶ 11). Although Rasdon had appealed the whole judgment, this Court declined to address Thrash's claim since he failed to file a cross-appeal.
 

 Id.
 

 ¶ 22. As this Court did in
 
 Brock
 
 and
 
 Rasdon
 
 , we hold that Nixon's appeal of the entire Commission order does not relieve Howard Industries of its obligation to file a cross-appeal. Holding otherwise would set a dangerous precedent for future appeals to this Court. Obviously, Nixon was not appealing any part of the judgment that was in his favor, particularly the Commission's finding that he suffered a loss of wage earning capacity. For the reasons listed above, we find this issue is not properly before us and may not be considered.
 

 ¶ 23.
 
 REVERSED AND RENDERED.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.