# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-WC-01394-COA

**ROSE COX**                                                   **APPELLANT**

**v.**

**MEMORIAL HOSPITAL AT GULFPORT**                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/03/2017 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEYS FOR APPELLANT: | CAROLINE JANE SCOTT ROGEN K. CHHABRA |
| ATTORNEY FOR APPELLEE: | RONALD T. RUSSELL |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED: 07/24/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., WILSON AND TINDELL, JJ.

### TINDELL, J., FOR THE COURT:

¶1. Following a work-related compensable injury, Rose Cox filed a claim seeking permanent-partial disability benefits. After the administrative judge (AJ) denied Cox's claim, she appealed to the Mississippi Workers' Compensation Commission (Commission). The Commission affirmed the AJ's findings, and Cox then appealed to this Court. Finding no error, we affirm the Commission's judgment.

## FACTS

¶2. At the time of her injury, Cox had been employed for two years as a distribution technician at Memorial Hospital (Memorial) in Gulfport, Mississippi. On May 8, 2014, Cox

was leaving work and walking to the employee parking lot when a vehicle struck her. The collision injured Cox's legs and pelvis. Dr. Inez Kelleher, an orthopedic surgeon affiliated with Memorial, performed surgery on Cox. Following surgery, Cox underwent inpatient-rehabilitation treatment at Memorial. In addition to Dr. Kelleher, Cox received treatment from Dr. Lee Voulters, a neurologist who oversaw her rehabilitation.

¶3. At the hearing, the only medical evidence Cox submitted to the AJ consisted of the following: (1) Dr. Kelleher's work-release form, (2) Dr. Voulters's final report, and (3) Dr. Voulters's letter assigning Cox a permanent partial impairment (PPI) rating. The March 3, 2015 work release from Dr. Kelleher released Cox to return to work without any restrictions. Six days later, on March 9, 2015, Dr. Voulters found that Cox had reached maximum medical improvement (MMI). Dr. Voulters's final report stated that Cox had recovered well from her injury and achieved a functional status comparable to her pre-injury baseline level. Dr. Voulters opined that Cox should be able to resume her pre-injury position. Dr. Voulters further noted that Cox was able to squat well and ambulate without any assistive device. The only restrictions Dr. Voulters assigned Cox were no crawling or activities on her knees. On April 2, 2015, Dr. Voulters signed a letter assigning Cox a PPI of three percent for her body as a whole.

¶4. After Dr. Voulters placed her on MMI, Cox returned to her position at Memorial on April 14, 2015, and she performed the same tasks as she had before her injury. While Cox initially earned the same hourly wage rate she had previously earned, she eventually received a wage increase based upon a good evaluation from her supervisor at the end of 2015. At the

hearing on October 11, 2016, Cox testified that, since returning to work in April 2015, she had neither taken time off nor sought additional treatment related to her injury. She further testified that she did not need her cane to assist her at work and had never used a walker at work. Although she sometimes rested when her legs hurt and used a cart to help her distribute medical supplies, Cox testified that she was able to timely complete her assigned tasks and had not received any work-related complaints.

¶5. Cox's supervisor, Mary Bradley, confirmed that Cox returned to the same position she held prior to the accident and performed the same tasks. According to Bradley, several carts were available to help all the employees in Cox's department distribute hospital supplies, and she stated that she did not notice Cox rely on the carts more often following her injury. Bradley testified that she observed Cox for several weeks upon Cox's return to evaluate Cox's post-injury capabilities. Bradley stated that Cox never failed to perform any assigned tasks, never expressed concerns about her work assignments, never complained about injury-related issues, and never missed work due to such issues. Based upon her observations, Bradley concluded that Cox could satisfactorily perform all her job requirements. Bradley further testified that Cox had not received any reprimands since returning to work. Bradley instead characterized Cox as a valuable and knowledgeable employee whom she would "hire . . . again today if [Cox] reapplied tomorrow . . . ."

¶6. Cathy Wood, who served as Memorial's vice president of human resources, also testified that Cox returned to work full time after her injury without any restrictions. Wood confirmed that Cox performed the same pre-injury tasks at the same hourly wage rate and had

received no work-related complaints since returning from her injury. Like Bradley, Wood testified that Cox received a wage increase after returning to work based on her favorable performance evaluation.

¶7. Based on the evidence and testimony presented at the hearing, the AJ found Cox suffered no loss in wage-earning capacity. As a result, the AJ denied Cox's claim for permanent-partial disability benefits. Following Cox's appeal, the full Commission affirmed the AJ's findings. Aggrieved, Cox timely appeals to this Court.

**DISCUSSION**

¶8. Cox concedes her post-injury return to work at the same or greater wage rate created a presumption of no loss in wage-earning capacity.[1] However, Cox argues she presented sufficient evidence to rebut the presumption. She therefore asserts the Commission erred by affirming the AJ's denial of her claim for permanent-partial disability benefits.

¶9. "It is the claimant's burden to establish her entitlement to compensation, and the question of the existence and extent of any permanent disability arising out of a work-related injury is a question of fact for the Commission to determine based on the evidence before it." *Sampson v. MTD Prods.*, 225 So. 3d 541, 543-44 (¶9) (Miss. Ct. App. 2017) (quoting *Robinette v. Henry I. Siegal Co.*, 801 So. 2d 739, 743 (¶7) (Miss. Ct. App. 2000)). This Court applies "a substantial-evidence standard to review a workers' compensation case . . . ." *Leflore Cty. Bd. of Sup'rs v. Golden*, 169 So. 3d 882, 885 (¶8) (Miss. Ct. App. 2014). The

---

[1] *See Hudspeth Reg'l Ctr. v. Mitchell*, 202 So. 3d 609, 610 (¶7) (Miss. 2016) (recognizing that a rebuttable presumption of no loss of wage-earning capacity arises when an injured employee returns to work and receives the same or higher rate of pay).

4

Commission constitutes "the trier and finder of facts." *Id.* When substantial evidence supports the Commission's decision, we remain bound by the Commission's findings "even though the evidence would convince us otherwise, were we the factfinder." *Id.* However, we review questions of law de novo. *Id.*

¶10.    In the present case, Cox's medical evidence supported the Commission's finding that Cox failed to prove a permanent impairment. The medical evidence established that Dr. Kelleher released Cox on March 3, 2015, to return to work without any restrictions. Dr. Voulters, who oversaw Cox's rehabilitation, also concluded in his March 9, 2015 report that Cox "ha[d] made a good recovery" and could return to her pre-injury position. Dr. Voulters found Cox had reached MMI, and on April 2, 2015, he assigned Cox a three-percent impairment to her body as a whole. The only restrictions Dr. Voulters placed on Cox were no crawling or activities on her knees. However, neither party offered evidence to show that Cox's job responsibilities ever required such tasks.

¶11.    In addition, Cox's own testimony failed to support her contention that she sustained a permanent impairment and suffered a loss of wage-earning capacity. Cox returned to work full time on April 14, 2015, and she resumed her pre-injury position as a distribution technician. Cox performed the same tasks and initially received the same hourly wage rate that she had prior to her injury. Then, following a favorable performance evaluation from her supervisor at the end of 2015, Cox received an increase in her hourly wage rate. At the time of the hearing on October 11, 2016, Cox still earned this increased wage rate and had received no work reprimands or complaints. In addition, Cox testified that, after reaching

5

MMI and returning to work, she never took time off or sought further medical treatment due to her injuries. Furthermore, Cox stated that she had been able to timely complete her work duties without the assistance of a cane or walker.

¶12. Upon review, we find substantial evidence supported the Commission's decision to affirm the denial of Cox's claim for permanent-partial disability benefits. We therefore conclude this argument lacks merit.

## CONCLUSION

¶13. Because substantial evidence supported the Commission's decision to uphold the denial of Cox's benefits claim, we find no error. We therefore affirm the Commission's judgment.

¶14. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**